UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HORACE WALLACE,

       Petitioner,

                              CASE NO. 2:08-CV-13479

v.                            JUDGE VICTORIA A. ROBERTS
                                MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

       Respondent.[1]

_____/


# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   *Procedural Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.   *Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.   *Medical Record Claims (Claims I-III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.   *Violation of Discovery Order/Suppression* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        2.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        3.   *Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    F.   *Other Acts Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    G.   *Sufficiency of the Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    H.   *Jury Instructions (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
            a. Failure to Instruct on Felonious Assault . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

---

[1]By Order entered this date, Greg McQuiggin has been substituted in place of Hugh Wolfenbarger as the proper respondent in this action.

|  |  |  | b. Failure to Give Mitigation Instruction | 30 |
| I. | | | *Recommendation Regarding Certificate of Appealability* | 32 |
| | 1. | | *Legal Standard* | 32 |
| | 2. | | *Analysis* | 33 |
| J. | | | *Conclusion* | 34 |
| III. | | | NOTICE TO PARTIES REGARDING OBJECTIONS | 34 |

*      *      *      *      *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Horace Wallace is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

2.    On June 4, 2004, petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; and felonious assault, MICH. COMP. LAWS § 750.82, following a jury trial in the Wayne County Circuit Court. On June 18, 2004, he was sentenced to a term of life imprisonment on the assault with intent to commit murder conviction, and to a concurrent term of 2-4 years' imprisonment on the felonious assault conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN EVIDENCE OF PREVIOUS ACTS OF VIOLENCE WERE INTRODUCED.

II.    DEFENDANT WAS DEPRIVED OF HIS AM VI RIGHT TO A FAIR TRIAL AND HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN THE EVIDENCE FAILED TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT WITH RESPECT TO ARLENE MURRAY AND JERMAINE MURRAY.

2

III. DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS AND HIS VI [AM] RIGHT TO A FAIR TRIAL WHEN THE COURT REFUSED TO CHARGE FELONIOUS ASSAULT AND MITIGATING CIRCUMSTANCES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Wallace*, No. 256303, 2005 WL 3238398 (Mich. Ct. App. Dec. 1, 2005) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People*

*v. Wallace*, 475 Mich. 869, 714 N.W.2d 314 (2006).

5.      On September 13, 2006, petitioner filed a motion for relief from judgment in the trial

court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I. DID THE PROSECUTION FAILED [sic] TO COMPLY WITH THE COURT'S DISCOVERY ORDER AND ALSO WITHHELD [sic] OTHER EVIDENCE WHICH WAS EXCULPATORY IN NATURE THUS DENYING THE DEFENDANT OF HIS DUE PROCESS RIGHTS IN ACCORDANCE WITH STATE AND FEDERAL CONSTITUTIONS?

II. WAS THE DEFENDANT DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF APPELLANT [sic] COUNSEL ON DIRECT APPEAL WHEN COUNSEL FAILED TO RAISE AND ARGUE MERITORIOUS ISSUES THAT ARE ESSENTIAL TO THE DEFENDANT'S CASE.

On January 22, 2007, the trial court denied petitioner's motion for relief from judgment.  The

Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order,

"for lack of merit in the grounds presented." *People v. Wallace*, No. 279946 (Mich. Ct. App. Oct.

11, 2007).  The Michigan Supreme Court denied petitioner's application for leave to appeal in

standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief

under MCR 6.508(D)." *People v. Wallace*, 480 Mich. 1186, 747 N.W.2d 265 (2008).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on August 12, 2008.  As grounds for the writ of habeas corpus, he raises six claims: (1) suppression of exculpatory evidence; (2) ineffective assistance of appellate counsel for failing to raise the suppression claim; (3) ineffective assistance of trial counsel for failing to seek enforcement of the discovery order regarding the victim's medical records; (4) improper admission of other acts evidence; (5) insufficient evidence; and (6) failure to instruct on lesser offenses.

7.      Respondent filed his answer on February 18, 2009.  He contends that petitioner's claims are barred by the statute of limitation; that petitioner's first through third claims are barred by petitioner's procedural default in the state courts; and that all of petitioner's claims are without merit.

8.      Petitioner filed a reply to respondent's answer on March 26, 2009.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from his assaults of Arlene Murray and two of her children, Jermaine and Kianna.  The evidence adduced at trial was accurately summarized in petitioner's brief on direct appeal:

> On the day of the incident, Myzell Paul, visiting his cousin who was an across the street neighbor from Defendant, had just driven into the driveway when Defendant's live-in companion, Arlene Murray and her child exited their house, both bleeding.  The top of her skirt was covered with blood and her son, wearing no shirt or shoes, was bleeding from the mouth and the back.  The bleeding was very bad and she was hysterical.  Arlene said that Defendant, who followed them out, had just jumped them and they needed help.  The witness had other men in his car and Defendant stopped near the end of the driveway.  The police were called.  Defendant was bleeding from his right hand.
> Katrina Cross Daniels lived in the house the previous witness was visiting and heard Arlene, who was drenched in blood, say that Defendant was trying to kill them.  The witness invited them in and Arlene told her that "he killing the kids, get my kids . . . out of the house."
> Arlene testified that she lived with Defendant and her four children, one of whom was Defendant's.  She said Juwan is five, Maurice 14, Jermaine, 13 and Kianna, 11.  On December 4, 2003 at about two or three in the morning Defendant

came in and started tearing down the house while she tried to get him out. She called the police but Defendant had left. At the time he had locked the family out of the house. When the police came, they put her son through the house and he opened the door. She tried to barricade the door but later he got back in and asked her how she had been able to get into the house.

The next day, at 3:00 p.m. Defendant came upstairs, hit her leg with a lamp and asked where his knife was. He then went downstairs and returned with his knife and said "I'm fixing to kill y'all. I'm fixing to kill all us" and started stabbing her. At the time she and all of the children were in the children's room. He was using a four or five inch pocket knife. The first stab was on the left side of her neck; the next in her stomach. He kept stabbing while she tried to get out of his way but he was blocking the exit. The children were hollering and were trying to help.

Jermaine threw him down and all three of them were on the floor. Then Defendant was on top of Jermaine. Arlene bit Defendant and then he bit her. Kianna was trying to help and he stabbed her in the hand. When they got free they ran to the stairs and Defendant pushed them down the stairs. They fell and rolled down the stairs. At the time she was bleeding from her neck and stomach and Jermaine was bleeding from his mouth. Defendant chased them down the stairs, about three to four feet behind, trying to stab her. She ran out the front and across the street to the neighbors where a person was pulling up, telling them she was stabbed. She identified her cuts on a photograph. She described a cut on her face for which she had stitches as well as on her neck; she said her ear was cut off. (Split, cut down.) She stayed in the hospital two days. Kianna suffered an injury during the struggle.

During the fight Defendant was struck in the head with a baseball bat. (It was a real bat but the composition was in doubt.) She said this was done by Maurice. Defendant came after Maurice, who got away, Defendant saying: "I'm fixing to get your son too." Jermaine suffered a cut at the same time as Defendant was struck on the head.

Officer Laura Manzella saw Arlene and her family across the street; Arlene had blood all over her; her shirt was torn and she was sobbing uncontrollably; she had several lacerations to the neck, lip area and back and was in shock. Kianna was cut on her hand. She named Defendant and said he had run out the back door. When the witness went to the house she found blood all over, outside the back door and smeared along a vehicle next to the house.

Kianna testified that the night before the incident Defendant had come upstairs and was cussing at them, threatening to her mother "and stuff." He took all of them out of the house and locked the house until her little brother opened the door. Defendant was gone at the time. The next morning Defendant prevented them from going to school.

At 3:00 p.m. the next day while the[y] were all in the same room, Defendant woke her mother, asking for money. He got mad when she did not give him any and tore up the downstairs, throwing furniture and plates. He then returned upstairs and asked again for money. When the mother refused he hit her leg with a lamp. When she tried to go downstairs he pulled his pocket knife and said they could not get out

and he was going to kill them and himself. He then cut Arlene on the side of her face, stabbing her on the side of the ear. She had nothing in her hands. Blood was all over her shirt and the children were yelling and crying and he kept her from leaving: "you ain't going to go nowhere."

Jermaine pushed him off of Arlene. Then Defendant had Jermaine down too like he was trying to choke him. Then he hit Jermaine in the mouth and there was blood everywhere. Kianna pulled Jermaine from Defendant. She didn't remember who grabbed the bat. (Later she said it was Jermaine). Defendant was bringing the knife down at Jermaine and when was pulling Arlene back the knife got into her hand; "So he stuck my hand" while she was trying to help her mother. Arlene was trying to pull the knife from Defendant while they were in the hallway and he was biting them. She and Jermaine left the room and Defendant pushed Jermaine and Arlene down the stairs. The witness then left the house. She said other members of the family jumped in and the fighting was wild and things happened pretty fast; it was wild and crazy and confused.

Canine Officer Kevin Brathwaite found Defendant in the attic space above the bedroom; lying in the joists.

Jermaine, 13, confirmed the prior testimony except to say that his sister hit Defendant with the bat. He said defendant hit him first, when he tried to leave, stabbing him in the chest and back with the knife. When defendant pushed him down the stairs he and his mother tumbled kind of like a ball. He was in the hospital for five days.

Maurice Murray said he was the one who hit Defendant with the bat.

* * * *

Defendant testified he asked Arlene for $5.00 to buy cigarettes. He denied all the events of the previous evening. She developed a rage all of a sudden when he approached her and came slashing at him with a knife. He was unarmed. She had recently accused him of fooling around in the relationship. As a result of her attack he received 18 stitches in his hand which is why there was so much blood. He hid in the attic because he was afraid of the dog. He denied attacking the family. He acknowledged "tussling" with Arlene when she lunged at him with a knife. Jermaine tried to break it up and Defendant and Arlene fell on top of him while he tried to seize the knife from Arlene. All of the kids were on top of him when Jermaine hit him with the bat. He denied putting the family out of the house or of stabbing Arlene or the children or threatening them.

Def.-Appellant's Br. on App., in *People v. Wallace*, No. 256303 (Mich. Ct. App.), at 1-6.

C.    *Procedural Issues*

Respondent first raises two procedural challenges to petitioner's entitlement to relief. First,

respondent contends that petitioner failed to comply with the statute of limitations. Second, he

contends that petitioner's first through third claims are barred by petitioner's procedural default in the state courts.

1.    *Statute of Limitations*

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996).  In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions.  Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  The statute further provides that the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  In *Artuz v. Bennett*, 531 U.S. 4 (2000), the Court explained that under § 2244(d)(2), "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement in the official record.  And an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable rules governing filings."  *Id*. at 8 (emphasis in original) (citations

omitted). The Court further explained that the rules governing filings "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.*

Here, the Court need not engage in a detailed calculation of the limitations period, because respondent's argument presents a simple legal question. Respondent argues that, because petitioner did not file an application for leave to appeal from the trial court's denial of his motion for relief from judgment within 21 days of that judgment, as required by MICH. CT. R. 7.205(A), he no longer had a "properly filed" application for postconviction relief pending which would toll the limitations period. Under respondent's argument, because petitioner did not file an application for leave to appeal within the 21 day period, his application for postconviction relief was no longer "pending" under § 2244(d)(2) after the trial court denied the motion for relief from judgment, and his application is therefore untimely. Respondent's argument, however, ignores both Rule 7.205(F) and Rule 6.509(A). The latter provides that "[a]ppeals from decisions under this subchapter are by application for leave to appeal to the Court of Appeals pursuant to MCR 7.205. The 12-month time limit provided by MCR 7.205(F)(3), runs from the decision under this subchapter." MICH. CT. R. 6.509(A). Rule 7.205(F), in turn, provides that a party who does not file an appeal of right or application for leave to appeal within the time provided in Rule 7.204(A) or Rule 7.205(A) may file a delayed application for leave to appeal within 12 months of the judgment or order from which appeal is sought. *See* MICH. CT. R. 7.205(F)(1), (3). Here, there is no question that petitioner filed a delayed application for leave to appeal within the time allowed by Rule 7.205(F), and respondent does not argue that petitioner's application is untimely if the time his appeals were pending in the Michigan Court of Appeals and Michigan Supreme Court tolls the limitations period under §

2244(d)(2). Contrary to respondent's argument, the Michigan courts routinely treat delayed applications for leave to appeal as timely, properly filed appeals. *See People v. Porter*, 476 Mich. 865, 720 N.W.2d 289 (2006) (". . . defendant's application for leave to appeal was timely filed in the Court of Appeals pursuant to MCR 7.205(F)(3) . . ."); *People v. Edge*, 476 Mich. 860, 717 N.W.2d 883 (2006) (same); *cf. People v. Buriel*, No. 238416, 2003 WL 462478, at *1 (Mich. Ct. App. Feb. 21, 2003) (under former Rule 6.311(A), which allowed for a motion to withdraw a plea within the time for filing an application for leave to appeal, such a motion was timely if filed within the one year period provided by Rule 7.205(F)(3)); *People v. Highland*, 482 Mich. 881, 752 N.W.2d 465 (2008) (suggesting the same); *People v. Schmidt*, No. 243775, 2004 WL 345374, at *1 (Mich. Ct. App. Feb. 24, 2004) ("Defendant failed to file a motion to withdraw his plea or for resentencing within the twelve-month period for seeking delayed leave to appeal.").[2]

Thus, the Court should conclude that petitioner's delayed application for leave to appeal, filed within the time explicitly authorized by Rules 6.509(A) and 7.205(F)(3), was "properly filed" under § 2244(d)(2), and thus served to toll the limitations period. Because respondent does not claim that petitioner's application is untimely if this period is tolled, the Court should reject respondent's limitations argument.

2. *Procedural Default*

Respondent also contends petitioner's first three claims are barred by petitioner's procedural

---

[2]Contrary to respondent's argument, it is not the case that "the rule that even a delayed application for leave tolls the statute would toll the statute of limitations indefinitely after the trial court issued its [motion for relief from judgment] denial–conceivably for 20 years or more." Answer, at 4 n.2. A delayed application for leave to appeal must still be filed within one year, a time limit that is jurisdictional and represents a "firm deadline" which "prevents stale applications for leave to appeal." *Chen v. Wayne State Univ.*, 284 Mich. App. 172, 193, 771 N.W.2d 820, 834 (2009). Thus, a delayed application filed outside of the one-year period provided by Rule 7.205(F) will not be timely, and therefore will not be "properly filed."

default in the state courts, because petitioner failed to raise these claims on direct appeal. The Court should decline to resolve petitioner's claims on the basis of procedural default.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was

not.  *See* MICH. CT. R. 6.508(D)(1)-(3).  The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court.  *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits).  The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue.  *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010).

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."  *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).  In light of the difficult questions discussed above, the procedural default analysis is significantly more complicated than the analysis of petitioner's substantive claims for relief, and in light of the fact that the issue is pending before the *en banc* Sixth Circuit, the Court should therefore proceed to the merits of petitioner's claims.  Indeed, the Sixth Circuit itself has taken this approach.  *See Roush v.*

*Burt*, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

Further, even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner contends that his appellate counsel was ineffective for failing to raise his first and second claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Medical Record Claims (Claims I-III)*

Petitioner's first three claims relate to the medical records of both himself and the victims. Petitioner contends that the prosecution failed to provide the medical records as required by a state

court discovery order, and that the records would have supported his assertion that the victims were the initial aggressors. He also contends that his trial counsel was ineffective for failing to seek enforcement of the discovery and to introduce his booking photograph into evidence, and that his appellate counsel was ineffective for failing to raise these two claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1. *Violation of Discovery Order/Suppression*

a. *Clearly Established Law*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show both that the prosecutor withheld evidence which was both (1) favorable to the accused and (2) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the evidence favorable or

exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, one the other hand, any of these questions is answered in the negative, then petitioner has failed to establish a *Brady* violation.

### b. Analysis

As noted above, petitioner had no constitutional right to discovery, *see Weatherford*, 429 U.S. at 559, and he therefore cannot establish his entitlement to habeas relief merely by demonstrating that the prosecution failed to provide discovery information in violation of a court order. Any violation of the state law discovery rules raises an issue not cognizable on habeas review. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002); *Burns v. Lafler*, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004) (Gadola, J.); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 867 (E.D. Mich. 2003) (Tarnow, J.). Rather, petitioner must show that he was deprived of material, exculpatory information by the prosecution's omission. Petitioner has failed to make this showing.

First, petitioner cannot show that the medical records were "suppressed" within the meaning of *Brady*. It is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations

omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004). Here, petitioner clearly knew of the facts about which he sought discovery, and he offers no reason why he could not himself have obtained the medical records directly from the hospitals that treated both he and the victims. Certainly, he would have had no problem obtaining his own medical records, and could have requested a subpoena or court order directed to the hospital for the victims' medical records. *See* 45 C.F.R. § 164.512(e)(1); MICH. CT. R. 6.201(C)(2).

Nor can petitioner show that the medical information was material. Under *Brady*, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987); *accord Strickler*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 682 (1985) (Blackmun, J.). Here, there was no question that petitioner and the victims engaged in an extensive struggle which involved both a knife and a baseball bat. It was admitted by the prosecution witnesses that petitioner was struck with a baseball bat, and it was not disputed that petitioner received a laceration on his hand that required stitches. Further, Arlene identified photographs of her injuries. Given the extensive fray and the fact that both petitioner and the victims were injured, evidence of both of which was presented to the jury and undisputed at trial, the medical records would have shed no light on the question of who attacked whom first. Even if the victims' injuries were less severe than they testified, or petitioner's injuries more severe, this would not have provided any probative evidence as to whether petitioner or Arlene first attacked the other with the knife. That question was simply a credibility contest between the victims and petitioner on which the medical records had no bearing. *See Morrison v. Quarterman*, No.

2:03CV0442, 2006 WL 3445231, at *11 (N.D. Tex. Nov. 21, 2006).[3] Thus, even if the medical

records were "suppressed," petitioner cannot a reasonable probability that the result of his trial

would have been different had the medical records been disclosed. Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

### 2. *Ineffective Assistance of Counsel*

Petitioner also contends that his trial counsel was ineffective for failing to challenge the

prosecutor's failure to turn over the medical records, and that his appellate counsel was ineffective

for failing to raise the discovery and ineffective assistance of appellate counsel claims on direct

appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a. *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of

counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's

errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at

687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here

is no reason for a court deciding an ineffective assistance claim . . . to address both components of

the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

should be followed." *Id.*

---

[3]Notably, the extent of the victim's injuries was not an element of the offense. Under the assault
with intent to murder statute, "[n]o actual physical injury is required for the elements of the crime to be
established." *People v. Harrington*, 194 Mich. App. 424, 430, 487 N.W.2d 479, 483 (1992); *see also*, *Cobble
v. Smith*, 154 Fed. Appx. 447, 453 (6th Cir. 2005).

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

### b. Analysis

Petitioner contends that counsel was ineffective for failing to challenge the prosecutor's alleged violation of the discovery order. As explained above, petitioner cannot show that the evidence was suppressed, and thus counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection). Further, even if the evidence was suppressed or was not disclosed in violation of the discovery order, as explained above petitioner cannot show that the evidence was material because it had no bearing on who was the initial aggressor. Because petitioner cannot establish materiality under *Brady*, he likewise cannot establish prejudice under *Strickland*. *See Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007); *Snow v. Sirmons*,

474 F.3d 693, 725 n.34 (10th Cir. 2007). The same holds true for counsel's failure to introduce petitioner's booking photograph, which he contends would have supported his testimony regarding the extent of his injuries. And because petitioner's underlying suppression and ineffective assistance of trial counsel claims are without merit, petitioner cannot show that appellate counsel was ineffective for failing to raise these claims on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Discovery*

Accompanying his habeas application, petitioner also filed a motion for discovery, seeking a copy of the discovery order issued by the trial court, as well as the medical records which are the subject of his first three claims. On December 15, 2008, the Court denied the motion for discovery without prejudice because respondent had not filed its answer. In light of my recommendation above, the Court should conclude that discovery is not necessary to resolve petitioner's claims.

"A habeas petitioner, unlike the usual civil litigant, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, a petitioner is entitled to discovery only if the district judge "in the exercise of his discretion and for good cause shown grants leave" to conduct discovery. Rule 6, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. In order to establish "good cause" for discovery, petitioner must establish that the requested discovery will develop facts which will enable him to demonstrate that he is entitled to habeas relief. *See Bracy*, 520 U.S. at 908-09. The burden is on the petitioner to establish the materiality of the requested discovery. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Here, petitioner cannot establish "good cause" for discovery because the information he

seeks will not develop facts which will bear on whether he is entitled to habeas relief. Discovery of the discovery order issued by the trial court will not develop facts which will support his entitlement to relief because, as discussed above, violation of a state discovery order does not raise a federal constitutional claim cognizable on habeas review. Nor will discovery of the medical records develop facts supporting petitioner's entitlement to relief. As noted above, petitioner has failed to show that these records were suppressed, because they could have been obtained by counsel. Furthermore, even assuming that, as petitioner claims, the medical records would call into question the extent of the victims' injuries, petitioner cannot establish materiality because nothing in the medical records would bear on who was the initial aggressor. Thus, the Court should conclude that no discovery is necessary to adjudicate petitioner's suppression and ineffective assistance claims.

F.      *Other Acts Evidence (Claim IV)*

Petitioner next contends that he was denied a fair trial by the introduction of evidence that he previously had been convicted of assault with intent to do great bodily harm. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Analysis*

Petitioner contends that he was denied a fair trial by the introduction of evidence relating his possession of a handgun after the murder. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner

was denied a fair trial by the introduction of this evidence.  This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b).  Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial.  *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).  As the court of appeals explained, petitioner "extensively testified that he never threatened the victim, Arlene Murray, or the children in any way, on this occasion or any occasion. . . . [Petitioner] specifically stated that he had never been aggressive and that he 'would never do anything like' stabbing Arlene."  *Wallace*, 2005 WL 3238398, at *1, slip op. at 1.  Thus, evidence of petitioner's prior assault conviction was relevant to "impeach his testimony that he never engaged in violence."  *Id.*, slip op. at 2.  Because the evidence was relevant for a proper purpose, petitioner cannot show that its introduction deprived him of a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Sufficiency of the Evidence (Claim V)*

Petitioner next contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a

felony[.]" MICH. COMP. LAWS § 750.83. Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)). As with other mental-state elements, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence. *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

2. *Analysis*

Petitioner contends that the evidence presented at trial was insufficient to prove that he possessed the requisite intent to kill either Arlene or Jermaine. The Michigan Court of Appeals rejected this claim, reasoning:

> There was sufficient evidence to allow a rational jury to conclude that defendant committed the crime of assault with intent to murder Arlene. Defendant assaulted Arlene when he took a knife and began stabbing her. The repeated stabbing in different areas of her body, the fact that prior to the assault he left her presence to retrieve the knife before returning, his verbal statement that he intended to kill her, and his aggressive and violent demeanor could all lead a rational factfinder to conclude that he specifically intended to kill her. Likewise, there was sufficient evidence that defendant committed the crime of assault with intent to commit [the] murder [of] . . . Jermaine. Defendant hit and pushed Jermaine, he attempted to choke him, and he stabbed Jermaine in the chest and again in the back. Defendant also made the statement that he intended to kill the entire family. All of this could lead a rational fact finder to conclude that he specifically intended to kill Jermaine. There was sufficient evidence to support the jury's conclusion that defendant was guilty beyond a reasonable doubt of assault with intent to murder both Arlene and Jermaine.

*Wallace*, 2005 WL 3238398, at *2, slip op. at 2. The Court should conclude that this determination was reasonable.

Contrary to petitioner's argument, there was an abundance of evidence from which the jury could conclude that he assaulted both Arlene and Jermaine with the intent to kill them. As explained above it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren*, 161 F.3d at 361 (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)). Thus, even in the absence of any evidence that he expressed an intent to kill or succeeded in killing the victims, the testimony that he repeatedly stabbed Arlene and choked Jermaine, as well as the testimony that he pushed them down the stairs, provided more than sufficient evidence from which the jury could conclude that petitioner intended to kill them. Moreover, in this case the victims testified that petitioner, in fact, expressed an intent to kill them. Thus, the evidence was sufficient to prove petitioner's intent to kill at the time he assaulted Arlene and Jermaine. Further, the fact that the evidence may have supported another version of events–that petitioner did not harbor an intent to kill–is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Jury Instructions (Claim VI)*

Finally, petitioner contends that he was denied a fair trial by the trial court's failure to instruct the jury on the lesser offense of felonious assault and on mitigating circumstances. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied. *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994). *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but

merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an element of the case onto the defendant, as when it instructs the jury to presume that a person intends to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir.1995). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.  *Analysis*

*a. Failure to Instruct on Felonious Assault*

Petitioner first contends that the trial court improperly failed to give an instruction on felonious assault as a lesser included offense of assault with intent to commit murder. The Court should reject this claim, for two reasons.

First, this claim does not present a cognizable basis for habeas review. Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction

in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).

Second, any error in failing to give a felonious assault instruction was harmless. The jury was instructed on the lesser included offense of assault with intent to commit great bodily harm, *see* Trial Tr., Vol. III, at 34-35, 37-38, but nevertheless convicted petitioner of assault with intent to commit murder. Assault with intent to commit great bodily harm is a lesser offense than assault with intent to commit murder, but a more serious offense than felonious assault. As noted by one circuit court, the Supreme Court has recognized that "in cases involving offenses on a ladder, if the trial court wrongfully refuses to charge the offense at the bottom rung, that error is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which is also charged." *Geschwendt v. Ryan*, 967 F.2d 877, 884 (3d Cir. 1992) (discussing *Schad v. Arizona*, 501 U.S. 624, 647-48 (1991)); *accord Six v. Delo*, 94 F.3d 469, 478 (8th Cir. 1996); *Allridge v. Scott*, 41 F.3d 213, 220 (5th Cir. 1994); *Slade v. Taylor*, 689 F. Supp. 595, 599 (E.D. Va. 1988). Because petitioner was convicted of the greater offense of assault with intent to

commit murder over the intermediate offense of assault with intent to commit great bodily harm, petitioner was not prejudiced by the trial court's failure to instruct on felonious assault. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*b. Failure to Give Mitigation Instruction*

Petitioner also contends that he was denied a fair trial by the trial court's failure to give an instruction on mitigation. Specifically, petitioner contends that the court should have given the following instruction:

> If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

MICHIGAN STANDARD CRIMINAL JURY INSTRUCTION 2D § 17.4. The court of appeals rejected petitioner's claim, concluding that the instruction was not warranted by the facts because petitioner presented no evidence that he was acting under adequate provocation as required to support a finding of manslaughter had the victims died. *See Wallace*, 2005 WL 3238389, at *3, slip op. at 3. The Court should conclude that this conclusion was reasonable.

Under Michigan law voluntary "[m]anslaughter is murder without malice." *People v. Mendoza*, 468 Mich. 527, 534, 664 N.W.2d 685, 689 (2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Thus, "[u]nder Michigan law, 'voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation, and before a reasonable time has passed for the blood to cool and reason to resume its habitual control.'" *Todd v. Stegal*, 40 Fed. Appx. 25, 29 (6th Cir. 2002)

(quoting *People v. Fortson*, 202 Mich. App. 13, 19, 507 N.W.2d 763, 767 (1993)).  In other words, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions."  *Mendoza*, 468 Mich. at 535-36, 664 N.W.2d at 690.  Not every form of provocation, however, will suffice to negate the malice necessary for murder.  As the Michigan Supreme Court has explained,

> [t]he provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. . . .
>
> In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control.  Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter.  The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions.

*Pouncey*, 437 Mich. at 389, 471 N.W.2d at 350; *see also*, *People v. Sullivan*, 231 Mich. App. 510, 518, 586 N.W.2d 578, 582 (1998).

Here, regardless of the evidence that petitioner was acting under the heat of passion, there was no evidence to show that his passion was brought about by adequate provocation.  The only evidence of any provocation was testimony that Arlene had refused to give petitioner five dollars when he asked for it.[4]  This denial was woefully inadequate to constitute adequate provocation as a matter of law.  Because the mitigation instruction was not warranted by Michigan law and the facts of the case, petitioner cannot show that he was denied a fair trial by the court's failure to give the instruction.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief

---

[4]Petitioner did also testify that his attack was brought about by Arlene's initial attack on him and that he was merely defending himself.  This testimony did not go to adequate provocation, but to self-defense.  And the jury was instructed on self-defense with respect to the assault against Arlene.  *See* Trial Tr., Vol. III, at 40-43.  With respect to the remaining two assaults, the jury was instructed on petitioner's defense of accident.  *See id.* at 43.

on this claim.

I.  *Recommendation Regarding Certificate of Appealability*

1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability. Because it is clear that petitioner's and the victims' medical records were available to petitioner, and because they would have had no bearing on the issue of who was the initial aggressor, the resolution of petitioner's *Brady* and related ineffective assistance of counsel claims is not reasonably debatable. In light of the relevance of petitioner's prior conviction to impeach petitioner's testimony, and the lack of any clearly established federal law establishing a due process right to exclude other acts evidence, the resolution of petitioner's other acts evidence claim is not reasonably debatable. Further, in light of the victims' testimony at trial regarding the nature of the assaults by petitioner and his expressed intention to kill

them, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Finally, because there is no constitutional right to instruction on a lesser included offense and because the evidence did not support a finding that petitioner acted with adequate provocation warrant a mitigation instruction, the resolution of petitioner's jury instruction claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

J.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/18/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on May 18, 2010.

s/Eddrey Butts
Case Manager